### Rowe Walker v. State.

No. 2057. Decided November 27, 1912.

1.—Burglary—Sufficiency of the Evidence.

Where, upon trial of burglary, the evidence sustained the conviction, there was no error.

2.—Same—Bills of Exception.

Where the bills of exception were insufficient under the rules of this court, the same will not be considered on appeal.

3.—Same—Jury and Jury Law—Challenge for Cause.

Where defendant did not exhaust his peremptory challenges and no objectionable juror sat upon his case, there was no error, even if the court should have sustained defendant's challenges for cause.

4.—Same—Evidence—Identification.

Where the testimony with reference to the identification of the alleged stolen goods went to the weight and not the admissibility of the evidence, there was no error; besides, the identification as to the stolen goods was complete by other testimony.

5.—Same—Evidence—Description of Breaking.

Where the State's witness was allowed to illustrate before the jury, with a stick, the condition of the bar and door to the burglarized house, but was not permitted to state as to what another witness had told him with reference to such condition, there was no error.

6.—Same—Extraneous Offenses—Evidence.

Upon trial of burglary, there was no error in the court's refusal to admit testimony as to extraneous crimes committed by a co-defendant which were not connected with the case on trial.

**7.—Same—Charge of Court—General Objections.**

Where the objections to the court's charge were not specific in pointing out any alleged error therein, they cannot be considered on appeal; besides, the court's charge was correct.

**8.—Same—Charge of Court—Principals.**

Where, upon trial of burglary, the evidence raised the issue of principals, the court correctly charged on such issue.

**9.—Same—Recent Possession—Charge of Court.**

Where the court's charge on the possession of property recently stolen followed approved precedent, there was no error.

Appeal from the District Court of Comanche. Tried below before the Hon. J. H. Arnold.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Callaway & Callaway,* for appellant. On question of challenge for cause: Giebel v. State, 28 Texas Crim. App., 151; Pierson v. State, 18 id., 524; Steagald v. State, 22 id., 464; Massey v. State, 31 Texas Crim. Rep., 371; Randle v. State, 34 id., 43; Cline v. State, 36 id., 320.

On question of permitting witness to demonstrate condition of open doors: Wilson v. State, 51 S. W. Rep., 916; Cannada v. State, 29 Texas Crim. App., 537; Gonzles v. State, 16 id., 152.

On question of extraneous crime: Dawson v. State, 32 Texas Crim. Rep., 535; Kelley v. State, 31 id., 211.

On question of insufficiency of evidence: Green v. State, 31 S. W. Rep., 386; Garcia v. State, 70 S. W. Rep., 95; Brooks v. State, 70 id., 419; Green v. State, 59 Texas Crim. Rep., 6; 127 S. W. Rep., 549; Morgan v. State, 25 Texas Crim. App., 498; Munson v. State, 34 Texas Crim. Rep., 498.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—The appellant was indicted and convicted of burglary and his penalty fixed at two years, which is the lowest penalty prescribed by law.

It is unnecessary to give a detailed statement of the evidence. It was clearly sufficient to authorize the jury to find that on or about June 19, 1911, the store of the Farmers' Union at DeLeon in Comanche County, in charge of and under the control of one Morton, was burglarized and a suit case, a suit of clothes and other clothing were stolen therefrom. This suit case and the clothing were soon afterwards recovered and sufficiently identified to show that it was the property stolen from said store at said time. Appellant was shown to have lived in said town of DeLeon since early boyhood. He was about seventeen years old at the time of this burglary. He was

shown to be reasonably familiar with the store and in it the evening of the burglary. Was also in it the next morning after the burglary. He left DeLeon the evening after the burglary on a freight train about 3 o'clock in the evening. By his own testimony he claimed that he bought this suit case and clothing from one Ed Gray about 2 o'clock the night of the burglary, paying him $4.15 therefor; that he and Gray were at the depot at that time of night and that Gray left on the train a few minutes after his (appellant's) claimed purchase of the suit case and clothing; that he hid the suit case and its contents under a house that night and himself slept in an open park,—not at his grandfather's where he is shown to have lived, if he could be said to have a place of habitation. On the freight train in the evening after he left DeLeon going north he is shown to have had this suit case filled with these clothes. In effect, on this occasion, he told the brakeman, to whom he tried to sell some of the clothes and did sell a pair of pants, that he bought the goods on a credit and was leaving the country, not stating to that witness from whom he had bought the clothes and suit case, although, in effect, asked about it. He, on the next day, is shown to have had the said suit case filled with said clothes in Cisco, some 30 miles north from DeLeon and that on that day he sold some two suits of the clothes. The first person to whom he sold some of these clothes on that day inquired where he got so many clothes and he stated that he had been working on the railroad and wanted to quit his job and could not get his money and that he traded his time check for the clothes and got them from said Farmers' Union store in DeLeon. Later, on the same day, when he sold another suit of the clothes to another witness and was asked where he got them, he claimed that he bought them at DeLeon from a clerk in said Union store. This witness could not tell for certain whether he said Ed Gray or Ed Morton, or Ed somebody else. To another witness the same day or the day later, to whom he sold some more of the clothes, he claimed that he was broke and trying to get some money to get off and get a job and did not tell this witness from whom or where he got the clothes. It was clearly shown that he did not buy the clothes or any of them, or suit case, from either of the clerks in said store, there being only two clerks or employes in said store. After he had made the disposition of the different suits and pieces of clothes above mentioned, it seems, the officers upon investigation, began to hunt him to arrest him for said burglary. He heard of this and began to undertake to evade arrest and skipped about from first one place to another to various towns on the Texas Central and Texas & Pacific railroads, but was ultimately arrested when fleeing and attempting to get out of the country. Later, after arrested for this burglary, when the county attorney and justice of the peace were investigating the question he made a written statement. At first he stated and had it written down that he bought the clothes from Ed Gray at Cisco and that

they were delivered to him at Cisco, some 30 to 35 miles from DeLeon. After having so stated and having that so written down, the county attorney and justice of the peace told him that they knew that was not true because they had found from others that they saw him hide the suit case under some coal in a coal tender in DeLeon. Then he had that statement erased and stated that he bought and received the suit case and clothes from Ed Gray and that Ed Gray delivered to him in DeLeon, he paying Ed Gray $4.15 therefor. The property was shown to have been worth many times more than $4.15. He sold part of the property at what he stated at the time was much less than the goods were worth, and got something like $10 to $15. It was shown on the trial that the State had made repeated efforts to get Gray as a witness for the State and that appellant made none. The State failed to get him; that Gray had been arrested at first for this offense but upon investigation discharged; that afterwards he was arrested and placed in jail for other offenses, broke jail and had not been apprehended since. Upon the whole, the evidence was amply sufficient to sustain the conviction. It was largely upon circumstantial evidence. The court gave a correct and proper charge on circumstantial evidence.

Appellant has several bills of exception, not one of which is sufficient under the rules to require this court to consider the point attempted to be raised. Sec. 857, p. 557, and sec. 1123, p. 732, of White's Ann. P. C. However, we have gone over every one of his bills and as explained and qualified by the court, no reversible error whatever is shown.

By his first bill he claims that the court erred in refusing to sustain his challenge for cause to several of the jurors, not one of whom served on the jury. The court, in allowing this bill, shows that the voir dire examination of the jurors did not disqualify them from serving. Notwithstanding this appellant peremptorily challenged them and did not exhaust his challenges and no objectionable juror sat upon the jury and no injury whatever is shown, even if it were conceded that the court should have sustained his challenges.

There are several bills complaining of the action of the court in permitting Morton, the manager of the store, to produce, identify and testify about the suit case and clothing claimed to have been stolen from said store at the time of the burglary. Appellant's objection to this character of testimony was that the goods produced and exhibited were not sufficiently identified as those which were so stolen. This would go to the weight and not to the admissibility of the evidence. The testimony by the State's witnesses sufficiently and, we think, clearly identified the suit case and some of the clothes stolen from said store. The court, in qualifying these bills, showed that this testimony objected to was only a part of the State's testimony as to the identification of the stolen goods at the time of the burglary.

It was shown that Mr. Stover, one of the two clerks in said store, reached the store next morning after the burglary before Mr. Morton, the other clerk and manager thereof, did. Upon discovering that the house had been burglarized, as soon as Morton arrived he showed him the situation of things and how the door had been unfastened and an entry effected, and then an attempted reclosing of the door after the burglary. Both of these witnesses testified and Stover, on the trial, illustrated and showed to the jury how the door had been opened, the entrance effected and an attempted reclosing and refastening of the door had been made. Appellant's objections to Morton's testimony was that what Stover had told him about how the door had been opened, etc., was inadmissible as hearsay. The court, in qualifying the bills, states that he allowed the witness to illustrate before the jury with a stick the condition of the bar and door in question, but did not permit him to state a word the witness Stover had said to him. No error is shown in this.

By another bill appellant claims that the court would not permit him to prove by several witnesses named that said Ed Gray had stolen a lot of goods from various stores and persons in DeLeon prior to said burglary, and had secreted them under the Baptist Church in DeLeon and had sold various of these stolen articles some time before this burglary, and that appellant had nothing to do with those thefts. The court, in effect, refused to approve this bill, stating that he did not agree that it correctly stated the facts, but he further explained and qualified it by stating that appellant did offer to prove prior to this burglary on distinct and different occasions that some other boys, including Ed Gray, had stolen goods and perhaps burglarized a store or stores in DeLeon; that he would not permit the time of the court in this trial to be taken up by inquiring into extraneous crimes and sought to confine the testimony to the case on trial; that while it was the theory of the State that Gray and appellant acted together in the burglary in question, he did not think it proper to go into the proof of these specific extraneous crimes by Gray, if any. The testimony was inadmissible in this case and especially so as explained by the court.

There are some complaints of various paragraphs of the court's charge. We have carefully gone over the whole charge and find that, taken as a whole, it is an admirable one and presents all of the various questions arising in the case, properly to the jury for a finding therein. None of his criticisms show any reversible error at all. Some of his complaints of the charge are too general and do not point out any specific error. For instance, he quotes only a part of the charge of the court on circumstantial evidence and then says that particular paragraph was error in that it did not correctly define circumstantial evidence and does not correctly apply it to the facts of the case, not pointing out wherein it did not correctly define circumstantial evidence and not pointing out wherein it did not cor-

rectly apply to the facts of the case. We have considered it in connection with the case and the whole charge and can find no error therein.

He also complains that the court charged on principals, claiming that such charge was not called for and there was no allegation in the indictment that appellant acted with any other in committing the offense if any was committed. The theory of the State, as stated by the court, was that if appellant himself did not commit the burglary that he participated therein as a principal with said Ed Gray and appellant's own evidence on this point raised such question and made it proper for the court to so charge and the charge on the subject, taken as a whole, correctly applies the law to the facts.

The court gave a full, fair and correct charge on the subject of appellant being found in possession of the recently stolen property from said burglarized house at the time of the burglary. This charge is strictly in conformity to charges on the subject uniformly approved as correct by this court. Sec. 1518, White's Ann. P. C., p. 624.

We have considered all of appellant's assigned errors in this case and find that none of them are sufficient to authorize this court to reverse the judgment in this case. The judgment is affirmed.

*Affirmed.*